# In the United States Court of Federal Claims

No. 04-954 C

(Filed October 26, 2006)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| METRIC CONSTRUCTION CO., | * | Contracts; |
| INC., | * | Equitable Adjustment; |
| | * | Constructive Change Doctrine; |
| *Plaintiff,* | * | Summary Judgment; |
| | * | Burden on Nonmovant; |
| v. | * | Defective Specifications; |
| | * | Misrepresentation; |
| THE UNITED STATES, | * | Reasonableness of Contractor |
| | * | Action in Response to Direction |
| *Defendant.* | * | by the Government. |
| * * * * * * * * * * * * * * | * | |

*Steven D. Meacham*, Seattle, WA, for plaintiff.

*Thomas D. Dinackus*, United States Department of Justice, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Harold D. Lester, Jr.*, Assistant Director, Washington, D.C., for defendant. *Robert W. Scharf*, Unites States Army Corps of Engineers, Sacramento, CA, of counsel.

_____

## OPINION
_____

**Bush**, *Judge*

Metric Construction Company, Inc. (Metric) seeks $2,173,091.85, plus interest, court costs and attorneys fees, for costs it incurred during the construction of a building for the United States Army Corps of Engineers (Corps). Defendant

moved for summary judgment on August 11, 2006, and defendant's motion has been fully briefed. Oral argument was requested by plaintiff, but was deemed unnecessary because plaintiff's briefed arguments were persuasive. Defendant's motion is denied, for the reasons stated below.

## BACKGROUND[1]

Metric was awarded Contract No. DACA05-99-C-0030 (the contract) to construct the Deployable Medical Systems Warehouse (the warehouse) at Hill Air Force Base in Utah. When the warehouse roof developed serious leaks, the Corps required Metric to install a new roof. Metric's claims before this court stem largely from the costs Metric incurred repairing water damage from the roof leaks, replacing damaged property in the warehouse and installing the second roof.

Jurisdiction over Metric's claims is undisputed and exists pursuant to 41 U.S.C. § 609(a)(1) (2000). Metric has pleaded three theories of entitlement to relief in this court: breach of contract, constructive change/extra work, and breach of implied warranty. Defendant contends that Metric's legal theories are all dependent on proving that the Corps' specifications for the building and roof of the warehouse were defective. Defendant further contends that the Corps' specifications for the roof, in particular, left the choice of a roof product to Metric, and that the Corps cannot be responsible if Metric's roof choice was incompatible with the underlying building structure. Def.'s Mot. at 9 ("Accordingly, it was Metric's responsibility to select a roofing system that was compatible with the [Corps'] building design. If the roof that Metric selected was not compatible with the [Corps'] building design, that was something for which Metric – not the Government – was responsible.").

Plaintiff frames the dispute differently. Metric asserts that the Corps provided Metric with a defective building design and also made erroneous representations to Metric, when Metric pointed out a potential design problem that was discovered as its subcontractor was preparing to install the roof. While defendant asserts that there are no genuine issues of material fact, Metric insists that the liability for the warehouse roof problems depends on unresolved issues. For example, Metric cites uncertainties as to what Metric should have known about

---

[1]/ Unless otherwise indicated, the facts recited in this opinion are undisputed. These facts are taken from the parties' pleadings, and do not constitute findings of fact by the court.

the building's structural incompatibility with the roof it selected, and whether Metric reasonably interpreted the Corps' instruction to Metric regarding the roof compatibility issue.

## DISCUSSION

### I. Summary Judgment

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a a matter of law."  RCFC 56(c).  A summary judgment procedure isolates and disposes of factually unsupported claims or defenses, *Celotex Corp.v. Catrett*, 477 U.S. 317, 323-24 (1986), serves judicial economy, and saves time and expense when a trial is not needed.  A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial.  *Id.* at 324.  The burden on the nonmovant in this scenario is to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting Fed. R. Civ. P. 56(e)).

Summary judgment must be granted when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" and the moving party has "demonstrate[d] the absence of a genuine issue of material fact."  *Id.* at 323.  "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case."  *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The Supreme Court has instructed that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249 (citation omitted).  "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other

facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323).

In considering a motion for summary judgment, the court does not "weigh[]" each side's evidence. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (citing *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988)). Rather, "the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 285 F.3d 1013, 1017 (Fed. Cir.) (citation omitted), *vacated on other grounds by* 323 F.3d 956 (Fed. Cir. 2002). That is, all doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc., v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "The movant bears the burden of demonstrating absence of all genuine issues of material fact." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc) (citing *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984)).

## II. Analysis

Defendant's burden here as movant for summary judgment is to show, when the facts are viewed favorably to Metric's position, that there is no genuine issue of fact material to the Corps' potential liability under the contract for the costs associated with the leaking warehouse roof. Metric's burden is to bring forth evidence that raises a material issue of fact regarding the Corps' liability for the leaky roof. *See Avia Group*, 853 F.2d at 1560 ("Thus, a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact."). Metric has carried its burden, whereas defendant has not.

One of Metric's theories of liability is founded on the constructive change doctrine, under which the government is liable for additional work caused by a constructive change to the contract. *See Aydin Corp. v. Widnall*, 61 F.3d 1571, 1577 (Fed. Cir. 1995) ("Where it requires a constructive change in a contract, the Government must fairly compensate the contractor for the costs of the change." (citing *J.B. Williams Co. v. United States*, 450 F.2d 1379, 1394 (Ct. Cl. 1971))). Several categories of constructive change have been identified: "(I) disputes over contract interpretation during performance; (II) Government interference or failure

to cooperate; (III) defective specifications; (IV) misrepresentation and nondisclosure of superior knowledge; and (V) acceleration." *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 678 (1994) (citations omitted). Here, Metric has alleged facts which implicate, in some measure, defective specifications and government misrepresentation.

### A. Defective Specifications

A contractor may rely on specifications provided by the government when constructing a building according to those specifications. *See Robins Maint., Inc. v. United States*, 265 F.3d 1254, 1257 (Fed. Cir. 2001) ("Whenever the government uses specifications in a contract, there is an accompanying implied warranty that these specifications are free from errors." (citing *United States v. Spearin*, 248 U.S. 132, 137 (1918))). "The test for recovery based on inaccurate specifications is whether the contractor was misled by these errors in the specifications." *Id.* Metric contends that the specifications for the warehouse were defective.[2] *See* Pl.'s Resp. at 1 (asserting the presence of government "erroneous design of structural steel" and "erroneous contract drawings"). "It is well-established that contractors may be entitled to an equitable adjustment for increased costs of performance due to defective specifications." *Clearwater Constructors, Inc. v. United States*, 71 Fed. Cl. 25, 32 (2006) (citing *L.W. Foster Sportswear Co. v. United States*, 405 F.2d 1285 (Ct. Cl. 1969)).

Mr. Tom Miller, president of Metric, submitted a declaration which discussed an alleged defect in the specifications for the warehouse. He alleged that

> his personal observation and the report prepared by Metric's consultant show[] that the government overestimated the dead loads[3] that would be applied to

---

[2]/ The issue of whether Metric was misled by allegedly defective specifications will be addressed in the next section of this opinion.

[3]/ Defendant explained the terms camber, dead load and live load in its opening brief:

> Camber refers to the fact that structural steel members that are roughly parallel to the ground are typically manufactured with a slight arch upward in the middle, so that as gravity pulls down on

(continued...)

5

>	the roof.  The actual dead loads of the roof are
>	approximately 1/2 of the design dead loads.  Because the
>	government's incorrect calculation of the dead loads as
>	represented on the contract drawings were only 1/2 the
>	actual loads, the roof did not deflect downward as
>	anticipated; therefore, the camber remaining in the joist
>	and joist girders exceeded the flatness tolerances required
>	by [the roof product manufacturer] for the roof installed
>	by Metric.

Pl.'s Facts ¶ 16.  Mr. Miller also alleged that "the government specified the amount of insulation to be installed under the roof panels . . . [and that] [t]he insulation also had the effect of pushing up on the roof panels that further restricted the ability of the roof panels to expand and contract contributing to the failure of the roof." *Id.* ¶ 17.  These are specific facts, which, if proved, would tend to support Metric's case that it relied on defective specifications in installing the first roof which leaked.

     Defendant argues, however, that Mr. Miller's declaration and the report by Metric's consultant are "insufficient to defeat a motion for summary judgment." Def.'s Reply at 7.  Defendant describes Metric's factual allegations as "inadmissible hearsay," "vague" and "unsupported, conclusory assertion[s]." *Id.* at 6-7.  Admissible evidence is not, however, required of a nonmovant resisting summary judgment.  *Celotex*, 477 U.S. at 324.  The nonmovant must point to sufficient evidence so that a reasonable jury could find in its favor on an issue for which it bears the burden of proof at trial.  *Anderson*, 477 U.S. at 249.  The court acknowledges that Metric has presented very weak evidence on the defective nature of the Corps' specifications for the structural steel and insulation, but that evidence is more than merely colorable.  Therefore, a genuine issue of material fact

---

    [3](...continued)
>	the member, it does not end up with a dip downward in the middle.
>	How much the steel deflects downward depends upon the dead
>	load (the weight that is always present, which in this instance was
>	the weight of the steel itself, plus the other portions of the building
>	that were held up by the steel), and the live load (weight that is
>	sometimes present; in this case, snow was the most important part
>	of the live load).

Def.'s Mot. at 10 n.4.

has been created by plaintiff's evidence and defendant may not be granted summary judgment.

Even if plaintiff fell short of creating a genuine issue of material fact, this court has discretion to deny summary judgment when the existence of triable issues of material fact is uncertain. *See Young Enters., Inc. v. United States*, 26 Cl. Ct. 858, 863 (1992) ("A trial court may exercise discretion to deny summary judgment when it is not reasonably certain that there is no triable issue of fact."); *see also Ehlers-Noll, GmbH v. United States*, 34 Fed. Cl. 494, 499 (1995) ("'The court has no discretion to *grant* a motion for summary judgment, but even if the court is convinced that the moving party is entitled to such a judgment the exercise of sound judicial discretion may dictate that the motion should be denied, and the case fully developed.'" (quoting *McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979))). When the factual context of a construction project is not yet fully understood by the court, it may be inappropriate to decide a claim on summary judgment which depends on information that has only been partially explained in the parties' briefs. *See Young Enterprises*, 26 Cl. Ct. at 863 (denying summary judgment because of "the factual complexity of circumstances and events during the course of the contract performance and the need for a thorough, detailed understanding of the factual context" of a large renovation project in a federal building). Because the evidence before the court concerning the camber of the structural steel and the insulation design is sparse and conflicting, and because the issue of a design defect or defects has not been fully resolved, the court will not grant defendant summary judgment on Metric's allegation of defective specifications.

### B.     Government Misrepresentation

Metric argues first that the plans and specifications misrepresented how, after construction was complete, the steel structure would flatten and support the metal roof panels that Metric was to install on top of the joists and insulation. Pl.'s Resp. at 7. This is, in essence, another aspect of the alleged defect in the Corps' design. Metric alleges that the information provided by the specifications and the plans misled Metric into installing a roof product which would not work.

Indeed, it is clear that the Corps' specifications for the warehouse and its roof were relied upon by Metric in choosing a roof product. *See* Def.'s Facts ¶ 17 (stating that Metric's roofing subcontractor "provided the specifications and plans for this project to a representative from [the roof product manufacturer], who

7

recommended installing the [roof product which Metric eventually had installed on the warehouse]"). According to Metric, the roof failed largely because the as-built steel structure did not perform in the same way as the steel structure described in the plans and specifications. *See* Pl.'s Resp. at 5 (blaming "the government's incorrect calculation of the dead loads as represented on the contract drawings" for "the problems caused by the roof camber"). This allegation of misrepresentation is supported by the declaration of Metric's president, Tom Miller.

Defendant asserts that Metric's claim concerning misleading plans and specifications must fail because "Metric never identifies when and how this purported misrepresentation occurred." Def.'s Reply at 4. It is true that Metric provided no citations in its brief to pinpoint the evidence supporting its allegation of misrepresentation by the Corps' plans and specifications, but this evidence is not entirely absent from the record before the court. For example, a discussion of the arched steel structural members, erroneous dead load amounts and camber which would not adequately flatten can be found in the deposition testimony of Mark Green, Metric's roofing subcontractor. *See* Decl. of Steve Meacham Ex. A at 3. Oblique reference to the disparity between actual and designed dead loads and the predicted flattening of the joists that never occurred is made by Metric's president, Tom Miller. Miller Decl. ¶ 12. Thus, Metric has provided limited evidence which supports its liability theory concerning misleading plans and specifications.

Defendant contends that Metric bore the responsibility for choosing a roof product that would work on top of the joists and insulation that the Corps had designed. Def.'s Mot. at 8 ("Metric was responsible for selecting a roof that was compatible with the design of the rest of the building."). Defendant cites to several provisions in the contract specifications which refer to Metric's responsibilities when constructing the warehouse. *Id.* at 8-9. These provisions provide ample support for defendant's contention, undisputed by plaintiff, that the choice of a roof product was left to Metric, and that Metric was responsible for choosing the right roof product for the building as designed.[4] But this argument does not

---

[4]/ Defendant also asserts that "Metric was contractually required to perform 'independent design analyses' to confirm that the . . . roof that it proposed for the . . . [w]arehouse was compatible with the Corps of Engineers . . . design." Def.'s Reply at 2. A closer reading of the specification cited by defendant reveals that Metric was required to provide "a manufacturer's standard product which satisfies all requirements contained herein and has been verified by load testing and independent design analyses to meet the specified design

(continued...)

8

directly refute Metric's contention that the Corps' plans and specifications were misleading and erroneous and that the information contained therein impaired Metric's ability to choose the correct roof product for the building when it was carrying actual loads.  For this reason, the court finds that Metric has identified a genuine issue of material fact in the question of whether the Corps' design misrepresented the structure's compatibility with the roof product chosen by Metric.

Finally, the parties vigorously dispute the significance of Metric's claim regarding Request for Information (RFI) 173.  Before installing the roof, Metric's subcontractor noted a potential problem with the camber of the roof joists – the steel plane created by the joists was not flat enough for the roof product chosen by Metric.  Contractors have a duty to inquire as to inconsistent specifications which include patent, that is, obvious or glaring, defects.  *See E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004) ("To demonstrate that it was misled, the contractor-claimant must show both that it relied on the defect and that the defect was not an obvious omission, inconsistency or discrepancy of significance – in other words, a patent defect – that would have made such reliance unreasonable."); *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004) ("If the ambiguity is patent, it triggers a duty to inquire.  A patent ambiguity is one that is 'obvious, gross, [or] glaring, so that plaintiff contractor had a duty to inquire about it at the start.'" (quoting *H & M Moving, Inc. v. United States*, 499 F.2d 660, 671 (Ct. Cl. 1974))).

Metric submitted RFI 173 concerning the camber issue to the Corps, the relevant text of which is reproduced here:

> DISTORTION OF STANDING SEAM METAL ROOF
>
> Due to the cambers on the open web joists, joist girders and steel trusses, which differ as the span changes, the

---

[4](...continued) requirements." Def.'s Facts ¶ 5 (citing specification section 07416).  Thus, the evidence currently before the court does not conclusively show that Metric was required to test the Corps' structural steel design for errors.  The court also notes that nowhere does defendant allege that Metric failed to obtain or provide the required analyses of its choice of a roof product.  For these reasons alone, a genuine issue of fact remains as to whether Metric was misled by the Corps' design for the steel structure under the warehouse roof.

>eave to ridge lines of the roof framing are not on an even plane. These inconsistencies may lead to the distortion of the standing seam metal roof panels beyond the tolerable allowance. Attached please find a copy of the manufacturers information sheet where item No. 6 gives us the tolerable distortion per panel length. Please provide us guidance into this matter before we proceed with the installation of the roof panels.
>
>[CORPS] RESPONSE
>
>JOIST & JOIST GIRDERS MANUFACTURED IN ACCORDANCE WITH THE SJI SPECIFICATION SHOULD BE AT THE RECOMMENDED TOLERANCE LEVEL. SHIMS UNDER THE CONCEALED FASTENERS MAY BE REQ'D WHERE TOLERANCES ARE EXCEEDED. ROOF INSTALLER SHOULD FIELD VERIFY PRIOR TO ERECTING PANELS.

Miller Decl. Ex. C. According to Metric, in responding to RFI 173, the Corps instructed Metric to proceed with the installation because the design should work. *See* Pl.'s Facts ¶ 12 ("Metric's understanding of the government's response [to RFI 173] was that if the joist[s] were designed and manufactured in accordance with SJI (which they were) that once all of the loads were applied that the joist[s] would flatten out and be within the recommended tolerances as required by [the roof product manufacturer]."). According to defendant, RFI 173 should have caused Metric to further inquire as to the potential compatibility problems inherent in its roof installation plan. *See* Def.'s Reply at 11 (stating that "it was irresponsible for Metric to simply direct [its roofing subcontractor] to install the roof, without first investigating the issue further").

     Whether the Corps' response to RFI 173 was a misrepresentation upon which Metric relied to its detriment is an issue which cannot be resolved on summary judgment.[5] The Corps might be liable if Metric can prove that the Corps

---

[5]/ Defendant protests that Metric has not pointed to any evidence of reliance on the
(continued...)

convinced Metric that there was no design flaw in the specifications which would hamper the functioning of Metric's chosen roof product. *See Robins*, 265 F.3d at 1258 (noting that in a situation where a "contractor identified a possible error in the contract, and the government led the contractor to believe that there was no error . . . , recovery might well be available"). Similarly, whether Metric's actions taken after receiving the Corps' response to RFI 173 were reasonable is another question that cannot be resolved on summary judgment. *See Scott Timber Co. v. United States*, 333 F.3d 1358, 1369 (Fed. Cir. 2003) (holding that summary judgment is not appropriate when a "reasonableness issue is intensely factual"). When viewing the facts favorably to Metric's case, Metric has identified genuine issues of material fact concerning the Corps' alleged misrepresentation in relation to RFI 173 and the reasonableness of Metric's decision to install its choice of roof product after receiving the Corps' response to RFI 173.

## CONCLUSION

The determination of the Corps' liability for the failure of the first roof on the warehouse depends on disputed material facts. Summary judgment is not appropriate when it is not clear that defendant is entitled to judgment as a matter of law. For these reasons, Defendant's Motion for Summary Judgment, filed August 11, 2006, is **DENIED**. The parties shall **FILE** a **Joint Status Report** on or before **December 12, 2007**, signaling any progress on settlement negotiations, and/or indicating their preferred schedule for further proceedings before the undersigned or the ADR Judge in the subject matter.

---

[5](...continued)
Corps' response to RFI 173. Def.'s Reply at 9 ("Metric asserts that it relied upon the [Corps'] response to RFI 173, but has failed to cite any evidence that supports this allegation."). First, RFI 173 asked specifically for Corps guidance before Metric would proceed with the roof installation. Miller Decl. Ex. C. After receiving the Corps' response, Metric proceeded to have the roof installed. This sequence of events implies reliance on the Corps' response to RFI 173. Other evidence supports an inference that Metric relied on the Corps' response to RFI 173. *See* Def.'s Reply App. at 16 (letter from Metric to its roofing subcontractor reporting that the Corps had directed Metric to "go ahead" with its roofing installation and that "[t]herefore Metric Construction is directing" its roofing subcontractor to proceed with the roof installation). Thus, some evidence supports Metric's allegation that it relied on the Corps' response to RFI 173 when it installed the first roof on the warehouse.

               <u>s/Lynn J. Bush   </u>
               LYNN J. BUSH
               Judge

cc:
ADR Judge Marian Blank Horn